UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

Case 1:19-cv-00038-AW-GRJ

CAPAL BEASLEY,

    Plaintiff,

v.

CENTRAL FLORIDA CONTRACTORS SERVICES, INC.,
and, BOBBY J. POWELL, JR., an individual,

    Defendants.
_____/

**PLAINTIFF'S MOTION FOR ADVERSE INFERENCE JURY INSTRUCTION**

The Plaintiff, CAPAL BEASLEY, by and through undersigned counsel, files this Motion for Adverse Inference Jury Instruction and states as follows:

**A.   Summary of Argument**

The Defendants destroyed crucial records which they had a *statutory* duty to keep under the FLSA—namely, invoices (a/k/a/ "job slips" or "job tickets") of concrete pouring jobs performed by Plaintiff—all of which showed his work hours/arrival/departure, and the kind of work being performed.  Adding insult to injury, even after Defendants received Plaintiff counsel's February 25, 2019 FLSA demand letter (ECF 65-11), they *continued* discarding Plaintiff's job invoices, ultimately, destroying them all.

Those documents were important because Defendants argue Plaintiff's termination on September 14, 2018 ("Termination I") was done for a legitimate business reason; namely, that Plaintiff was a *time thief* who overinflated his work hours, and otherwise "milked the clock." *See* Defendants' Response to Plaintiff's Motion for Summary Judgment (ECF 53) at pp. 5-6.

1

Defendants should not be permitted to make such an argument,[1] while having *destroyed* records showing Plaintiff's whereabouts, movements, hours, arrival, mileage, and departure from work. The Court should require that the jury receive an instruction permitting it to draw an *adverse inference* from the destruction of the invoices.

### B. Procedural History / Introduction

The Plaintiff brought this Fair Labor Standards Act, ("FLSA"), claim against his former employer, CFCS, and its owner/manager, Bobby Powell, Jr, for unpaid overtime and retaliatory discharge. *See* Amended Complaint (ECF 25)   The Plaintiff alleges the Defendants failed to pay him overtime wages in violation of 29 U.S.C. §207. *Id.* Plaintiff further alleges he was fired in violation of 29 U.S.C. §215, after complaining about the Defendants' unlawful alteration of his time/pay records as well as Defendants' failure to pay him overtime wages. *Id.*

On August 27, 2019, after 5.5 months of litigation, CFCS made an Offer of Judgment to resolve the Plaintiff's underlying overtime claim ("Count I").  On September 4, 2019, the Plaintiff accepted the Rule 68 Offer, and filed an Unopposed Motion for Entry of Judgment as to Count I ("Unpaid Overtime") (DE 34).   On March 10, 2020, the Court Granted that Unopposed Motion (ECF 34), stating judgment as Count I will be entered at the conclusion of the case.  The only claim remaining is Count II, wherein Plaintiff alleges the Defendants unlawfully retaliated against him for engaging in FLSA rights protected under 29 U.S.C. §215.

At the August 21, 2019 deposition of Defendant, Central Florida Contractors Services, Inc. (hereinafter, "CFCS"), two (2) individuals testified on the corporation's behalf:  its office manager, Patti Johns, as well as Defendant, Bobby J. Powell, Jr.  CFCS testified that the Plaintiff filled out a "job ticket" for each concrete pour job, and submitted it to the company. For the

---

[1] The Plaintiff will, separately, move in *limine* to exclude such prejudicial assertions.

Court's convenience a copy of a blank Job Report is attached as **Exhibit A.** As set forth in greater detail, *infra,* these job invoices, when filled out, show Plaintiff's hours, how he was spending his work time, and the amounts charged to CFCS customers. None of these daily job invoices were turned over as part of discovery, even though they were encompassed within Plaintiff's Request for Production #'s 1, 7 and 12.

To address that issue, the Plaintiff filed a Motion to Compel (ECF 35), and the Court subsequently held a hearing on November 14, 2019 (ECF 48), at which the Defendants told the Court that all of Plaintiff's job invoices has been *discarded*. The Court entered an Order Regarding Discovery Dispute (ECF 49) permitting the Plaintiff to "promptly serve an interrogatory directed at when and under what circumstances the relevant documents were destroyed."

Thereafter, the Plaintiff served interrogatories to CFCS to learn the *dates* when Plaintiff's job invoices were destroyed. CFCS responded saying, "It is not possible to provide the exact date or time each and every "job slip" or customer invoice was discarded beyond explaining that as part of CFCS's regular business practice, they were discarded in the hours or days contemporaneously with payment being received and reconciled with the invoice." *See* CFCS' Supplemental Response to Interrogatory 2(a) and 2(b), attached as **Exhibit B.**

In a nutshell, the job invoices are very important because they contain a wealth of information about *how* the Plaintiff was spending his work time, his hours and the unique aspects of each concrete pouring job. The Plaintiff's job invoices *directly* relate to Plaintiff's FLSA protected activity (complaints*)* about (a), not being paid for all overtime work hours, (b) the fact that Defendants unlawfully altered Plaintiff's time sheets, and (c), the Defendants' key defense that Plaintiff was fired for a legitimate business reason; namely, his alleged

3

overreporting/inflating of his work hours. Obviously, records showing *how* Plaintiff was spending his work time (the job invoices) are critical in this regard.

As described *infra*, the Defendants' spoliation of this evidence not only *explicitly* violated the FLSA, but it was done *even after* Plaintiff notified the Defendants of the Plaintiff's claims. The Court should require that the jury receive an instruction from the Court, permitting it to draw an *adverse inference* from the destruction of the invoices.

With respect to upcoming deadlines/events, trial is set for the period commencing **September 9, 2020**. *See* Amended Pretrial Order (ECF 91). Currently pending are:

1. Defendants' Motion for Summary Judgment (ECF 53) (hereinafter, "Def. MSJ");

2. Plaintiff's Motion for Partial Summary Judgment (ECF 55);

3. Defendants' Motion to Strike Exhibit A of Plaintiff's Response in Opposition to Motion for Summary Judgment (ECF 71);

4. Defendants' Motion to Strike Declarations (ECF 64);

5. Plaintiff's Motion to Strike Declarations (ECF 75);

6. Plaintiff's Motion for Attorneys' Fees (ECF 50);

7. Defendants' Motion to Exclude Late-Disclosed Witnesses (ECF 84);

8. The instant Motion.

### C. Memorandum of Law

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 Fed. Appx. 298, 301 (11th Cir. 2009) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). A district court has "broad

discretion" to impose sanctions for spoliation, which is derived "from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). "[S]anctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process." *Id.* Sanctions for spoliation of evidence include dismissal of the case or a default judgment; exclusion of evidence; or a jury instruction (adverse inference) on spoliation, which raises a presumption against the spoliator. *See United States Equal Employment Opportunity Comm'n v. GMRI, Inc.*, No. 15-20561-CIV, 2017 WL 5068372, at *22 (S.D. Fla. Nov. 1, 2017); *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 945 (11th Cir. 2005). The adverse inference makes a finding or imposes a rebuttable presumption that the missing evidence would have been unfavorable to the party engaging in the misconduct. *Schultze v. 2K Clevelander, LLC*, 17-CV-22684, 2018 WL 4859071, at *3 (S.D. Fla. Oct. 4, 2018).

An adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith; thus, negligence in losing or destroying records is not enough for an adverse inference, as " 'it does not sustain an inference of consciousness of a weak case.' " *Bashir v. Amtrak,* 119 F.3d 929, 931 (11th Cir.1997) (quoting *Vick v. Texas Employment Comm'n,* 514 F.2d 734, 737 (5th Cir.1975)). The Court should not infer that the missing evidence was unfavorable unless the circumstances surrounding the evidence's absence indicate bad faith. *Id.*

[T]he party seeking [spoliation] sanctions must prove ... first, that the missing evidence existed at one time; second, that the alleged spoliator had a duty to preserve the evidence; and third, that the evidence was crucial to the movant being able to prove its prima facie case or defense." *Point Blank Sols., Inc. v. Toyobo Am., Inc.,* 09-61166-CIV, 2011 WL 1456029, at *9

(S.D. Fla. Apr. 5, 2011). Mere negligence in losing or destroying records or evidence are insufficient to justify an adverse inference instruction for spoliation. *Bashir v. AMTRAK,* 119 F.3d 929, 931 (11th Cir.1997).

1. **Background About Job Invoices**

According to CFCS, a "job slip is a customer <u>invoice</u> for the work billed to [a] customer for a particular job." *See* Response in Opposition to Motion to Compel (ECF 40) at p. 6 (emphasis added). Job slips "state the terms of the agreement by the customer/contractor." See CFCS Response to Plaintiff's Second Set of Interrogatories at p. 7, attached as **Exhibit C**, attached hereto. Because of the type of information Plaintiff recorded on those invoices, they are very important documents in this case—especially where, as here, Defendants claim Termination I (on 9/14/18) occurred because Plaintiff was a "time thief" and a time clock "milker." See Defendants' Response in Opposition to Plaintiff's Motion for Summary Judgment (ECF 62).

As the Court can see from the sample job invoice slip attached as **Exhibit A**, Plaintiff had to write down, (a) the date of each concrete pour job, (b) the time of the job, (c) the time Plaintiff arrived on the site, (d) the time Plaintiff left the site, (e) the total pumping hours, (f) the Plaintiff's daily mileage, and (g) the total travel time. The document also allowed the pump driver to write down "Comments" about each concrete pour job. The Court can easily see why records like this are important: they show where Plaintiff was, what he was doing, and how much time he spent doing it.

## 2. **Defendants Had a Statutory Duty Under the FLSA to Keep its Job Invoices**

As the Court is well aware, the FLSA places the burden of keeping certain records squarely on an employer. *See* 29 U.S.C. §211. Setting forth the records that must be kept for two (2) years, the Code of Federal Regulations states as follows:

§ 516.6.  Records to be preserved 2 years.

(a) Supplementary basic records: Each employer required to maintain records under this part shall preserve for a period of at least 2 years.

> (1) Basic employment and earnings records. From the date of last entry, all basic time and earning cards or sheets on which are entered the daily starting and stopping time of individual employees, or of separate work forces, or the amounts of work accomplished by individual employees on a daily, weekly, or pay period basis (for example, units produced) when those amounts determine in whole or in part the pay period earnings or wages of those employees.
>
> (2) Wage rate tables. From their last effective date, all tables or schedules of the employer which provide the piece rates or other rates used in computing straight-time earnings, wages, or salary, or overtime pay computation.
>
> ***(b) Order, shipping, and billing records: From the last date of entry, the originals or true copies of all customer orders or invoices received, incoming or outgoing shipping or delivery records, as well as all bills of lading and all billings to customers (not including individual sales slips, cash register tapesor the like) which the employer retains or makes in the usual course of business operations.***

29 CFR §516.6 (emphasis/underline supplied).

CFCS admits Plaintiff's job slips were *invoices* billed to a customer for a particular job, which stated the terms of the agreement by the customer/contractor. *See* **Exhibits B, C**. As the Court can see, the job invoices set forth the contractual terms for each concrete pour order, as well as mathematical calculations for how much the customer had to pay. *See* **Exhibit A**.

Defendants were *legally* required to maintain CFCS' job invoices. 29 CFR §516.6. Why they would destroy records showing how much they were charging customers, as well as the work being performed, is difficult to comprehend.

### 3. **The Defendants Continued Destroying Plaintiff's Job Invoices *Even After* Being Put on Notice of Plaintiff's Claims.**

On February 25, 2019, the Plaintiff, through undersigned counsel, wrote a demand letter to the Defendants advising them of both Plaintiff's overtime claim, as well as his claim for retaliatory discharge. *See* FLSA Demand Letter (ECF 65-11). The demand letter stated:

> *Our client demands that you preserve all documents, tangible things and electronically stored information (ESI) potentially relevant to the issues raised herein, including but not limited to all computer time records and time records. You have been under an obligation to preserve ESI from the time you could have reasonably anticipated being sued and, therefore, this letter simply serves as a reminder of that obligation. You should not defer preservation steps if ESI may be lost or corrupted as a consequence of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which we are entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions and other appropriate legal relief.*

The Defendants admit that on February 25, 2019 at 5:18 p.m., they received a demand letter from the Plaintiff counsel's office complaining about overtime and retaliation under the FLSA. CFCS Depo. (ECF:65-2) at p. 311, lines 9-19. Defendant, Powell was made aware of the letter that day—February 25, 2019. *See id.*

Yet, despite receiving the letter, and despite Plaintiff specifically telling Defendants to "*preserve all documents, tangible things and electronically stored information (ESI) potentially relevant to the issues raised herein, including but not limited to all computer time records and time records,*" the Defendants discarded *all* Plaintiff's job invoices—even ones created *after* their receipt of the demand letter. This spoliation occurred even though the Plaintiff's demand letter also warned: "*Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which we are entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions and other*

*appropriate legal relief."* Defendants were, therefore, put on notice that consequences could flow from their destruction of records.

The records produced by the Defendants during discovery show the Plaintiff worked concrete pouring jobs on February 26, March 4 and March 5, 2019—all dates *after* receipt of the February 25, 2019 demand letter. *See* Time Records (ECF 65-13) a pp. 1-3. Yet, Defendants continued to discard the invoices reflecting those jobs, *as well as* every other job done by the Plaintiff even prior to receipt of the demand letter.

### 4. The Defendants Acted in Bad Faith by Destroying Plaintiff's Job Invoices.

Here, bad faith is evidenced by the fact that *even after* being notified of Plaintiff's claims by letter dated February 25, 2019, and *even after* being told in that letter that destruction of evidence *would* be harmful and constitute spoliation, the Defendants continued discarding Plaintiff's job invoices. In *Optwave Co. Ltd. v. Nitkin*, the district court held that a party's complete destruction of hard drive data after "he had been put on notice of potential litigation and explicit notice of the duty to preserve the evidence" constituted "bad faith." *Optowave Co., Ltd. v. Nikitin*, 6:05-CV-1083ORL22DAB, 2006 WL 3231422, at *11 (M.D. Fla. Nov. 7, 2006). Based on that finding, the *Optwave* court found the appropriate sanction was an "adverse inference instruction to the jury directing that the destroyed evidence would have supported the Plaintiff's case." *Id.* at *12. In spoliation cases, courts must not hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence because doing so allows the spoliators to profit from the destruction of evidence. *S.E. Mech. Services, Inc. v. Brody*, 657 F. Supp. 2d 1293, 1300 (M.D. Fla. 2009)(citing *Kronisch v. United States,* 150 F.3d 112, 128 (2d Cir.1998). The substantial and complete nature of the

destruction of evidence by the spoliator justifies a finding that the destroyed evidence prejudiced a plaintiff.  *Id*.

Bad faith can be found based on direct evidence or on circumstantial evidence where certain factors converge. *Calixto v. Watson Bowman Acme Corp.,* 07-60077-CIV, 2009 WL 3823390, at *16 (S.D. Fla. Nov. 16, 2009).  More specifically, where no direct evidence of bad intent exists, bad faith may be found on circumstantial evidence where all of the following hallmarks are present: (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator. *Id.*

Here, Defendants acknowledge that the job invoices once existed, but they were discarded in the regular course of business.  *See* **Exhibits B, C**.  The job invoices clearly evidence information about Plaintiff's whereabouts, activities and the *time/hours* he was working *See* **Exhibit A**.  The Defendants had a duty under 29 C.F.R. 516.6 to maintain the subject invoices.  Moreover, the Defendants were certainly put on notice after receiving the February 25, 2019 demand letter.

     **5.**    **The Defendants' Destruction of the Time Records Cannot be Credibly Explained.**

The Defendants have argued they were unaware of the need to preserve the job invoices because they are not "time records" or "payroll records."  *See* **Exhibits B, C**.  This is how the

Defendants attempt to "explain away" their spoliation. That position is meritless for a number of reasons.

First and foremost, the job invoices *are* time records. While it is true they *also* function to let CFCS customers know the terms of service and how much will need to be paid, the job invoices indicate precisely when Plaintiff arrived and departed job sites, what he was doing and how many miles he was driving. Because Defendants maintain Plaintiff overreported his time on his regular time sheets (ECF #'s 65-10, 65-13), this makes the importance of the discarded job invoices, even more crucial.

Second, the Plaintiff's demand letter did not request that Defendants preserve *only* "time records" or "pay records." Indeed, the February 25, 2019 demand letter stated: *Our client demands that you preserve all documents, tangible things and electronically stored information (ESI) potentially relevant to the issues raised herein*, **including but not limited to** *all computer time records and time records.* See Demand Letter (ECF 65-11) (emphasis added). This "including but not limited to" language shows that Plaintiff was not *only* seeking time/pay records, but was seeking "all documents" that were "potentially relevant to the issues" raised in the letter.

Third, the Defendants offer absolutely no explanation as to why after receiving the February 25, 2019 demand letter, they continued their practice of destroying Plaintiff's job invoices. Indeed, the Defendants cannot even state, *generally* when the Plaintiff's job invoices (those *before* receipt of the demand letter, and even those after) were destroyed, except to say that the destruction occurred after they were paid by customers. See **Exhibits B, C**.

Finally, it cannot be overlooked that the Defendants were destroying their *own* customer *invoices*. Although one could speculate, what *legitimate* business purpose this could possibly serve is hard to fathom.

CFCS gives its customers 30 days to pay invoices before applying a 1.5% service charge. *See* **Exhibit A** (bottom). Assuming that not a single CFCS customer ever paid a CFCS invoice late, (unlikely), but instead, paid within 30 days after being invoiced, then CFCS, in all likelihood, was destroying Plaintiff's job invoices well *after* receipt of not only Plaintiff's February 25, 2019 demand letter, but also his March 5, 2019 termination ("Termination II")—and, probably after the date this case was filed, March 7, 2019. *See* Complaint (ECF 1). Ultimately, CFCS cannot say the dates when Plaintiff's job invoices were destroyed—not the *pre-February 25*, 2019 invoices, and *not even* the *post-February 25*, 2019 invoices. *See* **Exhibits B, C**.

### Conclusion

Here, the Defendants seek to have their cake, and eat it, too. On the one hand, they want to defend this case arguing that Termination I was due to Plaintiff "inflating" the hours and "milking" ƒe the time clock, while on the other hand, destroying all the job invoices showing Plaintiff's hours, movements, activities, and arrival/departure. The Defendants violated their duty to maintain records they had an obligation to retain, both under the FLSA and after receipt of the February 25, 2019 demand letter. The Defendants acted in bad faith, and they can provide no credible explanation why they would *continue* destroying records, even after having received a letter notifying them that destruction of evidence *would* constitute spoliation.

WHEREFORE, the Plaintiff requests that the Court provide the jury with an adverse inference instruction based on the destruction of the subject job invoices. The Plaintiff also requests all other relief deemed appropriate.

> Respectfully submitted,
>
> BOBER & BOBER, P.A.
> Attorneys for Plaintiff
> 2699 Stirling Road, Suite A-304
> Hollywood, FL 33312
> Telephone: (954) 922-2298
> Facsimile: (954) 922-5455
> peter@boberlaw.com
>
> s/. Peter Bober
> PETER J. BOBER
> FBN: 0122955

## CERTIFICATION

The Plaintiff certifies that this Motion does not exceed 8,000 words.

> s/. Peter Bober